

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 18, 1950

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-983.

Re: The source of the fees due
the Tax Assessor-Collec-
tor of Cameron County for
assessing State ad valorem
taxes, since the entire tax
is now remitted to Cameron
County.

Dear Mr. Calvert:

You request the opinion of this office upon the questions presented in your letter of December 22, 1949, which we quote in full as follows:

"Since approximately 1925 Cameron County has operated under a State Tax remission bill, and throughout each and every year of such period, the State of Texas has paid to the Tax Assessor-Collector of Cameron County, one-half of the fees provided by Article 3937 for the assessment of State taxes.

"Prior to the enactment of House Bill No. 779, as passed by the 51st Legislature, there had been a percentage of the State ad valorem tax not remitted to Cameron County, and a sufficient amount of monies were collected under this percentage to pay the fees due the Assessor-Collector provided by Article 3937 for the assessment of State taxes. House Bill No. 779, as passed by the 51st Legislature, remits or grants the entire State ad valorem taxes levied to Cameron County.

"Since there is no levy under which one-half of the fees provided by Article 3937 for the assessment of State taxes (all taxes levied and collected in said Cameron County have been donated under H. B. 779), this Department wrote the following letter to the Book-keeper of the Ad Valorem tax Division under date of Dec. 15th, 1949.

" 'The regular session of the 51st Legislature passed House Bill 779 donating to Cameron County the .10¢ general revenue State taxes to be assessed and collected for the years 1949 and 1950, which amount, together with the general revenue taxes which previously had been donated to the County by the Legislature will give the County all of the general revenue tax.

" 'Article 3937, Revised Civil Statutes provides that the commission due the County Tax Assessor-Collector for assessing the taxes each year shall be paid one half by the State and one half by the County out of the taxes collected from the assessment roll. The general revenue part of the commission due C. H. Holcomb, Tax Assessor-Collector of Cameron County, for the year 1949, in accordance with the general revenue tax levy of .30¢ equals $2,351.07. Since the County is receiving all of the general revenue taxes as a donation, they should pay the $2,351.07 in accordance with Attorney General's Opinions No. 02 and 050, written Feb. 8, 1939 to Hon. Geo. H. Sheppard Comptroller of Public Accounts and Hon. Jack Wiech, County Attorney, Brownsville, Texas.

" 'You are, therefore, directed to charge by special entry the 1949 account of C. H. Holcomb, Tax Assessor-Collector of Cameron County, with the sum of $2,351.07, crediting a like amount to the Tax Account. File this letter with the Cameron County 1949 account papers.'

"The County Attorney of Cameron County has questioned the correctness of the instructions in the above letter, and he has requested this department to review our letter, and re-instruct our Bookkeeper to give credit to the Tax Assessor-Collector, of Cameron County, for the full one-half of the fees due for assessing the State taxes under the provisions of Article 3937 R.C.S.

"I shall, therefore, thank you to advise this department whether all the fees due the Tax Assessor-Collector, of Cameron County, under Art. 3937, for assessing the State taxes are chargeable against the monies collected for School and Confederate Pension purposes? It has been our construction that each Fund should bear it's prorata part of the compensation due the Assessor-Collector under Art. 3937; however, I refer you to Opinions Nos. 0-2; and 0-50 written by your Department under date of Feb. 8, 1939, and addressed to Hon. Geo. H.

Sheppard, State Comptroller, and Hon. Jack Wiech, County Attorney of Cameron County. I am also enclosing a copy of a letter addressed to this department, dated Dec. 19, 1949, by the County Attorney of Cameron County.

"There is no litigation pending that would determine the questions submitted herein."

By way of historical background we will review briefly the original remission act of the Legislature passed in 1925, and subsequent amendments thereto, applicable to Cameron County. The original act is Senate Bill No. 417, Acts 39th Leg., R.S. 1925, ch. 35, p. 161. This original act remitted to Cameron County for the purposes and under the conditions specified therein that part of the State ad valorem general revenue taxes in excess of 10¢ on the $100 valuation of property subject to taxation, collected upon property and from persons in the County of Cameron, including the rolling stock belonging to railroad companies ascertained and apportioned as provided by law. The result of this original bill was to donate to Cameron County two-thirds of the 30¢ on the $100 valuation levied for State general revenue, thus leaving one-third of the 30¢ to be retained by the State. The 1947 amendment, Acts 50th Leg., R.S. 1947, ch. 457, p. 1071, did not increase or decrease this remission to Cameron County, but subdivision (r) of Section 1-a, H. B. 779, Acts 51st Leg., R.S. 1949, ch. 309, p. 572, donated the remainder of the 10¢ on the $100 valuation to the County.

Article 3937, V.C.S., provides, in part:

"Each Assessor of Taxes shall receive the following compensation for his services, which shall be estimated on the total value of the property assessed, as follows: . . . . one-half of the above compensation shall be paid by the State and one-half by the county . . . "

Since the State had at all times prior to the enactment of H. B. 779, supra, retained one-third or 10¢ on the $100 valuation of the property covered by the original remission bill and amendments thereto, the State's part of the cost of assessing the taxes in Cameron County was in actual practice, and as a matter of accounting, charged against the one-third or 10¢ retained by the State.

We do not think that it was the intention of the Legislature to make the remission in the original act or any amendments thereto free of the cost of assessing and collecting the taxes. Heretofore it made no difference whether the State compensated the assessor for assessing the State's part of the taxes by charging the

same against the entire State levy of 30¢ or the remaining 10¢ on the $100 valuation, since the latter was sufficient at all times to fully compensate the assessor for the State's one-half of the cost of assessing. We do not now consider whether the prior procedure in handling this matter was proper. When the original act was passed as to Cameron County in 1925, Article 3871, V.C.S., now Article 3937, was the same as now except for subsequent minor amendments changing the basic figures of computation upon a graduated scale of valuations. When the Legislature enacted this remission act applicable to Cameron County, it knew that the general law (Art. 3937, V.C.S.) provided for the commission or compensation to the tax assessor for assessing State and county taxes, and that it required the State and county to share the cost equally. No change in this statutory requirement was made or intended to be made by the Legislature in the enactment of the Cameron County remission bill or the amendments thereto. The Legislature surely did not intend by these donations to Cameron County to reduce the amount of the school, college and pension funds, by making these funds pay the full amount of the tax assessor's fees.

The method of paying the State's part of the assessing cost is provided for in Article 3938, V.C.S., as follows:

"The Comptroller, on receipt of the rolls, shall give the assessor an order on the collector of his county for the amount due him by the State for assessing the State taxes, to be paid out of the first money collected for that year. . . ."

This statute comprehends the assessment of the taxes applicable to all the State funds, including the general revenue, school, college, and pension. The tax collector, after paying the assessor the State's part of the assessing cost in the manner provided by the foregoing statute, remits the balance of all State revenue to the Comptroller. The Comptroller in turn allocates the taxes thus collected and remitted, charging each fund with its pro rata part of the cost of assessing before depositing the same in the State Treasury, to the credit of the respective funds. The Comptroller and the Treasurer are required by law to keep separate accounts of funds collected and deposited. (Art. 4363, V.C.S., and Art. 4381, V.C.S., respectively.)

As far as we are able to ascertain throughout the entire history of the administration of the fiscal affairs of the State, the Comptroller has charged each separate fund derived from ad valorem taxation the cost of the State's part (one-half) for assessing the State and County taxes. This charge is made upon a pro rata basis of the total State levy. This, we think, is consistent with the legislative intent that each separate fund bear its pro rata cost of assessing. Such has been confirmed by long administrative practice,

presumably known to the Legislature and never in any manner changed. Indeed, it would be an unauthorized diversion and encroachment upon the school, college, and pension funds, to charge these funds with the assessing cost of the general revenue. The fact that all the general revenue is now remitted to Cameron County does not make it any less general revenue, and the fund must bear its pro rata share of the cost of assessing without reducing or encroaching upon the other funds.

From an accounting standpoint, the method suggested by you in your letter to Cameron County is sufficient to meet this requirement. The fact that this results in Cameron County getting the tax remission charged with the proportionate part of the State's one-half of assessing the same is not contrary to, but consistent with what we conceive to be the legislative intent. That is, the fund remitted by the 1949 act must still bear its proportionate share of the State's part of the assessing cost.

You are therefore advised that the State's one-half of the cost of assessing State and County taxes in Cameron County must be charged pro rata against all State funds.

## SUMMARY

The State general revenue remitted to Cameron County by virtue of H. B. 779, Acts 51st Leg., R.S. 1949, ch. 309, p. 572, and by S. B. 417, Acts 39th Leg., R.S. 1925, ch. 35, p. 161, must bear its proportionate share of the cost of assessing State and County taxes in Cameron County.

APPROVED:

W. V. Geppert
Taxation Division

Charles D. Mathews
Executive Assistant

Yours very truly,

PRICE DANIEL
Attorney General

By _____
Assistant

LPL/mwb